IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 12, 2006

## TRENT STARKS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 01-02374      Paula Skahan, Judge**

———————————

**No. W2005-02478-CCA-R3-PC  - Filed November 2, 2006**

———————————

Following a jury trial, the Petitioner, Trent Starks, was convicted of first degree murder. The State sought to impose the death penalty, but the jury sentenced the Petitioner to life in prison without the possibility of parole. The Petitioner's convictions were affirmed on direct appeal. In this appeal from the denial of post-conviction relief, the Petitioner argues that (1) his trial co-counsel was inadequate under the Sixth and Fourteenth Amendments, (2) his lead trial counsel failed to meet and communicate with him adequately in violation of the Sixth Amendment, (3) his lead trial counsel did not adequately advise him on whether to testify in violation of the Sixth Amendment, and (4) his lead trial counsel did not adequately investigate his alibi witness in violation of the Sixth Amendment.[1]  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Lauren Pasley-Ward, Memphis, Tennessee, for the appellant, Trent Starks.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; William L. Gibbons, District Attorney General; and Anita Spinetta, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]This Court has addressed the issues under each constitutional provision independently. Thus, the ordering of the issues differs slightly from the parties' briefs.

**OPINION**

**Background**

The Petitioner was convicted by a jury of first degree murder in the shooting death of Darrel Smith. He was sentenced to life in prison without the possibility of parole. This court affirmed the Petitioner's conviction on direct appeal. See State v. Trent Stark, No. W2002-03078-CCA-R3-CD, 2003 WL 22888912 (Tenn. Crim. App., Jackson, Dec. 5, 2003). The Tennessee Supreme Court denied the Petitioner's request for permission to appeal on May 10, 2004. The Petitioner filed a timely petition for post-conviction relief. The Petitioner was appointed post-conviction counsel, who filed an amended petition for post-conviction relief.

At the post-conviction hearing, the Petitioner testified that he "wanted to testify" at trial but that his attorney "just said don't testify period." The Petitioner said that his attorney told him there "wouldn't have been enough time" to "prepare" him to testify. The Petitioner said that, when asked in court whether he would waive his right to testify, he stated that he did not want to testify because his attorney convinced him not to. The Petitioner said that his attorney advised him that he was "going to get the death penalty" if the jury believed he was lying and had "no remorse." The Petitioner said that, if he had testified, the outcome of his trial would have been different because he would have explained to the jury that the State's witnesses were not credible and that he would have mentioned his alibi witness that would confirm he could not have been at the crime scene at the time of the shooting.

The Petitioner also stated that his lead trial counsel did not communicate with him adequately and that his attorney primarily worked on his robbery trial and did not discuss the capital murder case. The Petitioner stated that he could not recall how many times his attorney visited him in jail but that he did not feel it was sufficient for a death-penalty case.

With regard to the alibi witness, the Petitioner stated that he provided his attorney with the name and address of Mr. Hollywood Henderson. The Petitioner claimed that Mr. Henderson would have testified that the Petitioner was walking from his girlfriend's house to his mother's house at the time the shooting took place. The Petitioner claimed that Mr. Henderson would have testified that the Petitioner could not have reached his mother's house near the crime scene until at least twenty minutes after the murder occurred. The Petitioner said that he did not know for a fact that his attorney failed to investigate Mr. Henderson's whereabouts, but the Petitioner stated that Mr. Henderson did not testify at his trial. Thus, the Petitioner assumed that his attorney did not pursue the alibi information. The Petitioner said that he called people to try to get Hollywood Henderson to testify at the post-conviction hearing but that attempts to locate Mr. Henderson were unsuccessful because he was "running from the law."

With regard to his appellate counsel, the Petitioner testified that she should have raised additional issues on direct appeal. Specifically, the Petitioner stated that he wanted his appellate

counsel to raise the issue of the detective's inconsistent statements from the suppression hearing and the trial, the curious initials "T.R." on the confession statement,[2] the admission of the confession, and the fact that "there were two jurors crying during [his] trial." The Petitioner stated that appellate counsel never met with him before filing the appellate brief to consult with him about potential issues on appeal. The Petitioner alleged that the outcome of his appeal would have been different because the appellate court would be able to review all the issues that he wished to raise.

The lead trial counsel also testified at the post-conviction hearing, stating that he visited the Petitioner "a couple of times at most," between the initial interview and the preliminary hearing. The lead trial counsel testified that he represented the Petitioner for approximately two years in the capital murder case and a robbery case that was being used as an aggravating factor for the first degree murder charge.

The lead trial counsel testified that the Petitioner's co-counsel participated in his representation. Lead counsel stated that he "discussed the facts," "discussed [the] investigation," and "discussed the theories of the case." The lead trial counsel stated that he did "a whole lot of talking" to his co-counsel in preparing for the capital murder case and also discussed the matter with the entire capital team of the Public Defender's Office.

The lead trial counsel testified that he presented a claim of self-defense at trial at the Petitioner's request, even though he was leery of doing so because the victim was "shot in the back of the head." With regards to the Petitioner's alibi witness investigation, lead trial counsel testified that he and the capital case investigator searched for Mr. Henderson to no avail because the address the Petitioner provided was a "vacant lot." Lead trial counsel also subpoenaed Mr. Henderson, but the investigator was unable to serve the subpoena because he could not locate Mr. Henderson. Lead trial counsel further testified that, even if he had been able to locate Mr. Henderson, the alibi defense was "totally inconsistent" with the Petitioner's signed confession, which stated that he shot the victim in self-defense.

The lead trial counsel stated that he advises any accused that he has the right to testify and that "[n]obody can take that right away." Further, he stated that he will provide his opinion on whether a defendant should testify but reminds him that he does not "have to follow it." Lead trial counsel stated that he performed a voir dire examination of the Petitioner in open court and asked the "whole litany" of questions about "whether or not you're going to testify" and whether the decision is of "[his] own free will." The lead counsel testified that the Petitioner then answered that he chose not to testify on his own behalf. In conclusion, the lead trial counsel was asked whether

---

[2] The confession states that the accused is the Petitioner, Trent Starks. The confession is also signed legibly with the full name of Trent Starks. However, in five places throughout the confession, the initials "T.R." are signed, which are inconsistent with the Petitioner's initials. On cross-examination of the Petitioner at the post-conviction hearing, the prosecutor asked the Petitioner if he also went by the name "Trent Robinson" because Robinson was his mother's maiden name. The Petitioner replied that he was unable to remember if he went by that name at some time in the past because of his extensive drug use.

the outcome of the case would have been different had the Petitioner testified. Lead trial counsel opined that "[h]e probably would have been sitting on death row."

Trial co-counsel testified that she assisted the lead co-counsel in the Petitioner's case by being present at the initial intake, by discussing the case at the monthly meetings, and by sitting in at trial. Trial co-counsel said that she "discuss[ed] the facts of the case, the investigation, [and the] trial strategies" with lead counsel. Trial co-counsel testified that the lead counsel was ultimately the decision-maker but that he had any assistance he needed from co-counsel and the public defender capital attorneys. Trial lead counsel stated that this was crucial in preventing the Petitioner from receiving the death penalty.

The appellate counsel testified that she notified the Petitioner of the process of direct appeal and explained that she could raise issues from the motion for a new trial, issues of sentencing, and issues amounting to plain error. The Petitioner did not respond with any specific contentions or issues he wished to raise. The appellate counsel said that she then prepared and filed the brief and sent a copy to the Petitioner. The appellate counsel said that she chose to only present one issue on appeal—the sufficiency of the evidence—because she did not believe the other issues were meritorious.

## Standard of Review

To sustain a petition for post-conviction relief, a Petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

## I.  DUE PROCESS

First, the Petitioner asserts that his two appointed trial attorneys did not assist him sufficiently to comply with Rule 13 of the Rules of the Tennessee Supreme Court, thereby depriving him of his Fourteenth Amendment right to due process. We conclude that the Petitioner's representation was adequate under the due process requirement of the Fourteenth Amendment.

In Powell v. Alabama, 287 U.S. 45 (1932), the United States Supreme Court held that trial counsel must be appointed in a capital case to comply with the Fourteenth Amendment's due process protection. Id. at 71; McKeldin v. State, 516 S.W.2d 82, 26 (Tenn. 1974). "The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment." Avery v. Alabama, 308 U.S. 444, 446 (1940). However, the Sixth Amendment requirements are satisfied if counsel advocates in a "zealous and earnest" manner and actively participates in representing the

accused. <u>Id.</u> Furthermore, the Sixth Amendment criteria are met so long as counsel is given adequate time and notice to have a genuine opportunity to prepare the Petitioner's case. <u>Powell</u>, 287 U.S. at 71.

Rule 13 of the Rules of the Tennessee Supreme Court requires that the trial court "appoint two attorneys to represent a Petitioner in a capital case. . . . The counsel appointed shall be designated 'lead counsel' and 'co-counsel.'" Tenn. Sup. Ct. R. 13 § 3(a). The Tennessee Supreme Court's qualifications for lead counsel and co-counsel in a death-penalty trial are set forth in the rule. <u>See</u> Tenn. Sup. Ct. R. 13 § 3(c)-(d).

In this case, the Petitioner was not denied his Fourteenth Amendment right to due process of law because he was appointed competent counsel to represent him in his capital murder trial. There is no proof in the record which shows that the appointed attorneys were not given ample time and opportunity to prepare the Petitioner's case for trial. Further, the record shows that the trial attorneys advocated earnestly on the Petitioner's behalf, including successfully convincing the jury not to impose the death penalty. Although the trial court did not make specific conclusions of law regarding the Petitioner's due process claim, the record shows no constitutional deficiency of trial counsel.

With regard to the Petitioner's assertion that the two appointed trial attorneys did not comply with Rule 13 of the Rules of the Tennessee Supreme Court, the Petitioner cites no authority, and we are aware of none, setting forth that the heightened standards of Rule 13 are constitutionally mandated. The Fourteenth Amendment guidelines simply require the appointment of an attorney to a capital Petitioner. While the Tennessee Supreme Court has put into place heightened requirements in Rule 13, including the requirements of two attorneys that meet certain specific eligibility criteria, the attorneys need not meet these stringent standards to pass constitutional muster. Therefore, we conclude that the Petitioner has not shown by clear and convincing evidence that his conviction offended the Fourteenth Amendment.

## II. EQUAL PROTECTION

Next, the Petitioner asserts that he was denied his Fourteenth Amendment right to equal protection under the United States Constitution. Specifically, the Petitioner alleges that his trial co-counsel's failure to be involved in his defense deprived him of his equal protection guarantee. We conclude this issue does not have merit.

The Appellant relies on <u>Douglas v. California</u>, 372 U.S. 353 (1963), for the proposition that the United States Supreme Court has found a right to counsel on direct appeal under the equal protection clause of the Fourteenth Amendment. <u>Id.</u> While the Petitioner has accurately stated the constitutional requirements for appellate counsel, the Petitioner has not alleged any inadequate performance of appellate counsel. Therefore, we conclude that the Petitioner has waived this issue by failing to provide the court with factual support for the claim that appellate counsel was not constitutionally sufficient. <u>See</u> Tenn. Code Ann. § 40-30-106(d); Tenn. R. App. P. 10(b).

## III. THE INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, the Petitioner asserts that he received the ineffective assistance of counsel as required by the Sixth Amendment to the United States Constitution. Specifically, the Petitioner alleges he was deprived of this right in four ways: (1) the failure of co-counsel to "actively participate in the defense"; (2) the failure to adequately "meet with and communicate" with the Petitioner; (3) the failure to "properly advise" the Petitioner in making his decision on whether to testify; and (4) the failure to "consider, investigate, and present alibi witnesses." We conclude that the Petitioner's claims are without merit.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal Petitioner the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the Petitioner's lawyer and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The Petitioner bears the burden of establishing both of these components by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The Petitioner's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

**(1) Lead Trial Counsel's Failure to Meet and Properly Advise**
First, the Petitioner alleges that trial counsel failed to adequately meet with and communicate with him. We conclude that the Petitioner did not prove his factual assertions by clear and convincing evidence.

The record establishes that trial counsel performed an initial intake interview, met with the Petitioner at the jail throughout the representation, and conducted the trial. The Petitioner's only assertion of deficient performance is that lead trial counsel did not aid him in preparing to testify on his own behalf. The Petitioner alleges that his lead trial counsel did not have "enough time" to assist the Petitioner sufficiently so that he would be a beneficial witness. The State points out that the lead counsel thought that the Petitioner showed combative, angry, and aggressive tendencies which the jury likely would have seen from his testimony. The lead trial counsel explained at the post-conviction hearing that, in his opinion, the Petitioner should not have testified at trial because his violent demeanor may give the jury the impression that he was guilty and had no remorse. Lead counsel further explained his decision to advise the Petitioner not to testify by opining that, if the Petitioner had chosen to do so, "[h]e would probably be sitting on death row."

The Petitioner has not proven by clear and convincing evidence that the lead trial counsel's performance was constitutionally deficient. It is clear from the record that lead trial counsel made a tactical decision to discourage the Petitioner from testifying because he believed the Petitioner would be a poor witness. Further, the Petitioner personally waived his right to testify at trial after lead trial counsel informed him of his rights during the voir dire procedure. Thus, we conclude that the Petitioner has not presented clear and convincing evidence that his attorney was ineffective by advising him not to testify.

**(2) Lead Trial Counsel's Failure to Consider, Investigate, and Present Alibi Witnesses**
Next, the Petitioner alleges that lead counsel failed to investigate and present his alibi witness, Hollywood Henderson. We conclude that this issue is without merit because counsel's performance was not deficient. We also note that the witness did not testify at the post-conviction hearing.

The record of the post-conviction hearing reflects that trial counsel instructed the public defender's capital case investigator to look for the address of Hollywood Henderson. Further, counsel testified that he subpoenaed Hollywood Henderson but that the process server found only

a vacant lot at the address that the Petitioner had provided. Furthermore, lead trial counsel testified at the post-conviction hearing that the alibi defense was irreconcilably inconsistent with the Petitioner's confession that he committed the shooting in self-defense. Therefore, even if trial counsel had been able to locate the alibi witness, the record reflects that alibi testimony could have been harmful to the Petitioner's case. Therefore, we conclude that the Petitioner did not present clear and convincing evidence that trial counsel's performance was deficient.

In addition, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses . . . , these witnesses should be presented by the [post-conviction] petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). If he fails to do so, he generally fails to establish ineffective assistance of counsel. Id. The post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. Id.; see also Wade v. State, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995). Because the alleged alibi witness did not testify at the post-conviction hearing, the Petitioner did not demonstrate he was prejudiced by the witness's failure to testify at the trial.

### (3) Trial Co-Counsel's Representation

Finally, the Petitioner alleges that he received the ineffective assistance of counsel because his appointed co-counsel did not sufficiently participate in his case. We conclude that this issue does not gain the Petitioner relief because the quality of lead counsel's representation alone is constitutionally sufficient.

The Petitioner cites no authority, and we are aware of none, that the Sixth Amendment requires multiple attorneys for the representation of a capital Petitioner to be constitutionally sufficient. In this case, the Petitioner received the effective assistance of counsel by the diligent performance of his lead counsel alone. The Petitioner also had the benefit of having the assistance of an experienced co-counsel to further aid him during his trial. Therefore, we conclude that the Petitioner did not prove by clear and convincing evidence that he suffered a Sixth Amendment violation. The record supports the trial court's conclusion that the Petitioner received the effective assistance of counsel.

### Conclusion

Based on the foregoing authorities and reasoning, this Court affirms the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE